Bissell, P. J.
Edwin French, during the years for which the authorities of Costilla county assessed and levied taxes against his property in Colorado, was a resident of Missouri. He formerly lived in Colorado, but when and during what period the proof does not exhibit. During the time of his residence in Colorado or thereafter he either loaned money which was secured on real estate or bought the loans, and by either one or the other of these two methods acquired title to the notes which were secured by mortgages or trust deeds on Colorado property. While thus a resident of Missouri, and the holder of these notes, he sent or delivered them to Seth W. Hathaway and constituted him his agent to hold the notes and securities and clothed him with certain authority with reference to their custody and management. It is important to notice the power conferred on the agent, its extent, and its limitations. The authority was in writing, put in evidence, and uncontroverted, and therefore exactly and directly es *480 tablishes the scope of the authority. Thereby Hathaway was made French’s attorney to take charge of these notes and securities and all other papers which belonged to him in the state, and was authorized to receive and receipt for the money due him on the notes, accounts or otherwise, and to enter satisfaction when the loans were paid to execute releases of the mortgages and of the deeds of trust and was given full power to perform every such act requisite in the premises. Such and not otherwise was the power of the attorney. Thereunder, as stated, Hathaway became possessed of notes and securities in amount reaching nearly, if not quite, $20,000. In 1891, 1892, 1893, 1894 and 1895, Hathaway, assuming the power and exercising what he believed to be his right and performing what he fancied was his duty, made returns to the assessor of the amount of notes and securities which as agent he held for French. Acting upon these returns the assessor assessed against these securities the taxes Avhich were the burden properly assessed against that amount of property in each year, assuming that the property Avas subject to taxation. The taxes wére not paid and in November, 1896, they amounted, with the interest which was computed on the unpaid levies at the time of the filing of the claim, to a little upwards of $2,700. French deceased on the 15th day of June, 1893, at which date only the taxes for 1891 and 1892, in any event, were returnable by the agent. The return was made in 1892 prior to French’s death. All other returns were made after his death by Hathaway, and when, of course, he was no longer French’s agent. It is quite clear the death of the principal revoked the agency, and thereafter Hathaway was an individual acting without authority, and having no power as agent or otherwise to make any return to the assessor or to conclude the estate by any of his acts. In 1896, and in September of that year, proceedings were had in the county court of that county, whereby on petition of the heirs at laAV and the representative in Missouri, Hathaway was granted ancillary letters of administration to wind up the affairs in the state of Colorado. In those proceedings *481 the board of county commissioners filed a claim against the estate for these taxes. The claim was sworn to by the treasurer who averred the justness and correctness of the account and the existence of the indebtedness and the matter thereon came up for hearing. The complainant filed a motion asking permission to change the title of the claim and to docket it to conform to the amendment. The change was made in the title só that in place of being apparently a claim of the board of county commissioners of Costilla county against the estate, it was represented by the treasurer of the county. Leave was granted, and the claim came on for hearing, evidence was introduced, the court found that the treasurer was the proper person to bring suit for the collection of taxes on personalty, and after the disposition of these interlocutory matters a judgment was ordered against the estate for $2,722.84 and costs. The matter was taken by appeal to the district court of Conejos county on transfer, and therein the regularity of the proceedings in the county court permitting the amendment were challenged and the objection overruled, and the matter came on for trial. To support the claim as. filed, and maintain the right to judgment, the county authorities introduced the tax schedules which had been returned by Hathaway, showing the assessments and the levy for the various years, and stating the sum due for taxes from 1891 to 1896. This evidence was objected to principally on the ground that the schedules were not evidence against the estate, and did not competently show a proper assessment, levy or return by the proper person, and likewise on the ground that the property itself was not the subject of taxation. The county did not otherwise attempt to show that French had any property in the state, other than these notes and securities, nor did the treasurer prove that the agent had $20,000 in money, or that any other specific amount of French’s money was kept and used and loaned in the state, and thereby make an attempt to bring the property within the purview of the statute which authorizes the taxation on notes, credits and money belonging to nonresidents, Hathaway testified he *482 had in his hands in 1891, $273.22, in 1892, $473.85, in 1895, $198.55. It did not appear from the testimony that Hathaway ever held any money belonging to French at any time when these schedules were returned, or when the assessments and levies were made, other than these three several sums. It may be broadly stated no evidence was proffered by the claimant which in any wise tended to prove that French in his lifetime, or that the estate thereafter kept in Colorado any money which was either used or loaned within this jurisdiction for the purposes of business operations, whether of loan or otherwise. As suggested, the power under which Hathaway acted and the date of the death of French were proven, and the ancillary letters of administration, or the proceedings in which they were granted, were both produced showing the date at which Hathaway became the representative of the estate in Colorado.
This short and simple record exhibits all there is in the case to which we must apply the law. It presents very sharply the question whether notes and securities belonging to a nonresident and which are held in the state by an agent for the purposes of collection and reduction to money, without authority to loan the money thus collected or reloan it, is property which is subject to taxation. This inquiry has been the subject of considerable adjudication and there is a good deal of apparent diversity of opinion about it. The appellant, who is the administrator of the estate and against whom judgment was entered in the district court, insists that the court below erred, first, in permitting the amendment with reference to the title of the claim, and second, in holding that under the circumstances the property was subject to taxation. The proceeding for the collection of the taxes is not attacked, otherwise than with reference to the permission to amend, and we do not regard this matter as an error of grave consequence or one which we need decide in order to reverse the judgment. It would seem to be quite within the scope of the authority of the county court where the claim was filed to permit the amendment prior to judg *483 ment, and if it was not regularly done, and possibly if the power of the court was debatable, it would scarcely be useful to reverse the case for this reason, if the taxes were a legitimate claim against the estate.
In the first place we think the treasurer wholly failed to prove a case. It will be remembered the onty evidence which the treasurer produced to sustain his suit was the tax schedules or returns made by the agent. Manifestly, these returns were not competent evidence unless the person making them was clothed with power to make them and thereby bind his principal who would be estopped to contest their accuracy. This could not be true in any event, save as to the years 1891 and 1892, because French’s death in 1893 revoked the agent’s authority and he was no longer clothed with power as an agent, either granted by the principal or granted by his representative. We can, therefore, safely assume as to the returns for 1893, 1894, 1895 and 1896, they were not competent evidence to establish the assessment or the levy of the taxes, or that the property was the subject of taxation. We likewise conclude the returns were not sufficient evidence to establish the validity of the assessment and levy for the antecedent years. According to the record Hathaway was an agent to hold' and collect. He was possessed of no money belonging to the nonresident, nor so far as the proof shows had he ever kept any money belonging to French, used any money or loaned any money in the state on French’s behalf, — he was simply the holder of the notes for collection. If this position be properly taken and the statute requires more, it manifestly follows the returns made by the agent were not sufficient even as to the first years for which he made out the tax schedules and delivered them to the assessor. This brings us to the pivotal question which we regard as determinative of the controversy and which disposes of the judgment, and will in any event prevent a collection of the taxes on these notes, unless there be other and further proof offered on the subsequent hearing. As we view it, the matter has been wholly settled by a decision of *484 the supreme court which is a controlling authority with us and must be followed, unless we can discover something in the statute taking the present case out of the scope and operation of that decision. It was early held in the Commissioners of Arapahoe County v. Cutter, 3 Colo. 349, that a promissory note due from a resident in Colorado to a resident of another state was in no sense the property of the debtor and was not subject to taxation under the laws of Colorado, although the note might be secured on real property within the taxing jurisdiction of the then territory. It was held that debts belonged to the creditor, that they have no situs apart from his residence. Following the general rule it was adjudged that notes, trust deeds and mortgages were but dioses in action which followed the creditor and his domicile, and wherever that might happen to be, was subject tthe taxing power of that jurisdiction. In establishing this doctrine it followed the very elaborate opinion of the supreme court of the United States. State Tax on Foreign-held Bonds, 15 Wall. 300. Therein it was held, as it has been by many other courts, that property which is in the nature of debts, followed the domicile of the creditor and had no existence apart from the parties to whom the debts might be due. The Cutter case cites many other decisions holding the same doctrine, and a unanimous court announced the result. This decision binds us and we are thereunder compelled to hold, even if it were not our conviction, which it is, that it is the law that these notes, mortgages and trust deeds were not taxable in Colorado unless there is something in the statute which necessitates a different conclusion. This is insisted and the contention is rested on an act which was passed in 1876 and is found at page 118 of the laws of that year, and at section 1. This statute was re-enacted and is found in the General Statutes, 1883, page 867, section 1, which with three other sections, is the concluding paragraph of division 6, chapter 94 of these statutes. Vide, 2 Mills’ Ann. Stats. section 3924. This statute is :
“All moneys owned by nonresidents, that are kept and *485 used and loaned within- the territory (state) of Colorado for the purpose of investment and profit, shall be subject to taxation the same as personal effects and choses in action of persons domiciled in this territory (state).”
The appellee contends this statute has prescribed a different rule and thereunder these notes and credits were the legitimate subjects of taxation, and the authorities may assess and levy taxes on them. There are two difficulties with the contention, either one of which inhibits the affirmance of the judgment. In the first place the treasurer offered no evidence, and there is nothing in the record to show that the money represented by these notes and securities was ever kept and used and loaned within the state for the purpose of investment and profit, other than what he attempted to prove by the production of the tax schedules. Since we hold these schedules were not evidence against the estate, were made by a person without authority to make them, they would in no manner conclude the estate and would be wholly insufficient to sustain the claim as filed and permit its collection. Even if we should concede, which we do not, that these notes and credits were* necessarily subject to taxation if kept in the state, the production of the tax schedules in no manner tended to prove it, unless the proof had been subsequently and by other evidence brought clearly and squarely within the statute which authorizes the taxation of money belonging to nonresidents. The judgment, therefore, is not adequately supported by proof and for this reason alone would necessarily be reversed. It is quite possible, and we are free to admit, a case might be made by proof which would support the claim and bring it within the scope and purview of the statute, permit the taxation of the money belonging to the nonresident, and make out a case supportable by a line of authorities to which the appellee has called our attention, and possibly, though about this we do not express a definite opinion, compel a different conclusion. We do not believe we have a right abstractly to state what the law might be under any possible case that might be made in an *486 ticipation of the proof, because the facts as established might not warrant the statement of the law, as we should abstractly-put it, without the limitations and exceptions which the evidence would warrant. What we now intend to hold is, that in order to make these notes and credits taxable under this statute because within the jurisdiction of the state and the authority of the taxing power, the authorities must at least show everything which the act of 1876 requires. • As we read this statute it is plain, simple, and to be interpreted according to its exact terms, and the authorities must make a case precisely within its limits, if they would take it out of the operation of the general principle which the Gutter case approved and established. According to that act moneys owned by nonresidents are not subject to taxation like the personal effects of persons domiciled in the state, unless they are, according to the terms of the act, “kept and used and loaned ” within the state for purposes of investment and profit. The money, notes and credits must not only be kept but they must be used and loaned here for the purpose of profit; in other words, there must be in some manner and in some sense, a use of the funds in the state for business purposes. We do not imagine that if a nonresident loans money and takes notes therefor and removes, and simply retains those notes until their maturity, and then collects, that these securities are, within the terms of the statute moneys kept, used and loaned in the state for the purposes of profit. Nor do Ave think that if a nonresident should make a loan in the state or several loans, and take his notes and securities out of this jurisdiction, though he might thereafter send these notes and securities to the state for collection, he would thereby bring his property within our jurisdiction for the purposes of taxation. The statute evidently contemplates the keeping of moneys in the state for business purposes, loaning, collecting, reinvesting and using for profit. Some authorities hold that where money is kept in the state for business uses, it is taxable because it enjoys the protection and privileges of the sovereignty and thereby becomes sub *487 ject to the burdens of the support of the government which protects it. It must be observed that the language of the act in its conjunctive form requires this construction: the money must not only be kept here, but it must be used here, and it must be loaned here, and those three words taken together clearly indicate the legislative purpose to subject the property of nonresidents to taxation in our sovereignty only in case his capital is employed in the state for business purposes,' for loan, collection, reloan, or reinvestment and used in a manner analogous. to the purposes and uses to which persons domiciled in the state use funds which they are devoting to like objects. We therefore conclude that, the treasurer made out no case against the estate by the proof which he offered,'and that so far as we can now gather from the record, there are no circumstances connected with the transaction which would bring the matter within the scope and operation of 'the act of 1876. What the ultimate proof may show we do not know. It may be evidence will be offered which will compel us to apply the statute and adjudge that the money, notes and credits were legitimate subjects of taxation in this jurisdiction. We cannot, however, otherwise than to the extent to which we have gone, indicate what our opinion may be, when whatever proof the treasurer may be able to offer' on this subject shall be incorporated into the record and brought to our attention.
For the reasons stated, the judgment must be reversed and the cause sent back for further proceedings not inconsistent with the views which we have herein expressed.

Reversed.