## JOHN M. CORY v. DRAKE D. SPENCER.

### No. 13,619. (73 Pac. 920.)

#### SYLLABUS BY THE COURT.

1. ELECTIONS—*Members of Soldiers' Home at Leavenworth.* A member of the Western Branch of the National Home for Disabled Volunteer Soldiers, while maintained therein at public expense, is not deprived of the right to acquire a residence there for voting purposes by section 3 of article 5 of the constitution of Kansas.

2. ——— *Case Overruled.* The case of *Lawrence v. Leidigh,* 58 Kan. 594, 50 Pac. 600, 62 Am. St. Rep. 631, overruled.

3. ——— *Pleadings in Contest Court.* A contestee who holds a certificate to the office, regularly issued to him by the canvassing board, and who asks no affirmative relief, his answer going only to defeat the allegations made by the contestor, is not required by section 2659, General Statutes of 1901, to plead that he is an elector of the county.

Error from Leavenworth district court; J. H. GILLPATRICK, judge. Opinion filed October 10, 1903. Reversed.

*Dawes & Rutherford,* and *L. H. Wulfekuhler,* for plaintiff in error.

*A. E. Dempsey, J. H. Wendorff, J. C. Petherbridge, Frank Doster,* and *David Overmyer,* for defendant in error.

The opinion of the court was delivered by

GREENE, J. : At the general election of 1903 John M. Cory and Drake D. Spencer were opposing candidates for the office of county treasurer of Leavenworth county.   On the face of the returns Cory received a majority of the votes, and the canvassing board issued to him a certificate of election.   Spencer instituted this proceeding before a regularly organized contest court, which, upon a recount of the votes, excluded a certain number of votes cast by the members of the Western Branch of the National Home for Disabled Volunteer Soldiers, situated in Delaware township of said county, and declared Spencer to have received a majority of the legal votes cast.   Cory appealed to the district court, where a trial was had and judgment rendered in favor of Spencer, and error is prosecuted to this court.

The real question presented is the right of 785 members of the Western Branch of the National Home for Disabled Volunteer Soldiers, situated in Delaware township, Leavenworth county, to vote at such election.   Of these votes, 762 were cast for Cory and 23 for Spencer.   Of the 762 votes cast for Cory, the contest court sustained objections to, and excluded from the count, 741, on the ground that such members were not residents of Delaware township in said county. This was also the conclusion of the judge of the district court in the trial of the cause.

The persons whose votes were thus excluded had not, prior to entering the home, established a residence in Delaware township. They entered the home directly—some from different parts of this state, others from the state of Missouri, and possibly some from other states. It is contended by the plaintiff in error that one possessing the qualifications of a legal voter at his place of residence, who abandons that residence with the intention of never returning, and immediately thereafter takes up his residence in the home with the intention of remaining there permanently, acquires the right to vote there.

We admit that we approach a discussion of this question with some hesitation, not because we entertain doubts about the correctness of the conclusion we have reached, but because of a former decision of this court upon this precise question which we are satisfied is wrong. (*Lawrence v. Leidigh*, 58 Kan. 594, 50 Pac. 600, 62 Am. St. Rep. 631.)   As a matter of judicial policy, it is ofttimes better for the highest tribunal of a state to adhere to a construction once given to a statute, although erroneous, which by lapse of time has become the settled law of the state, than to disturb business conditions, and possibly vested rights, by reversing its own judgment. Generally, when such mistakes grow into the laws, the people may be relied on to make the proper corrections by legislative enactments, and the injuries consequent upon such changes being made by the court be thus avoided.   This remedy, however, is not efficacious when mistakes have been made in the interpretation of a constitutional provision.

The following are the agreed facts upon which the question is presented :

"That all of said persons, both married and single,

Cory v. Spencer.

at the time they moved from their places of residence, before coming to said home, abandoned their old homes with the intention on their part of making said home their permanent abiding-place ; and that they intended and claimed said home as their place of residence and abode, and the place to which, when absent, they intended to return.''

The liberty of removing from, and abandoning, a residence once acquired in one portion of the United States and taking up and acquiring a residence in another portion thereof is a right impliedly guaranteed to every citizen, in the lawful and rightful exercise of which he is protected by the constitution of the United States.' What shall be deemed a voting residence in any state is a subject controlled exclusively by the state itself, and is generally covered by some constitutional provision.  What qualifications one shall possess before he may claim the right to exercise this privilege in Kansas are prescribed by section 1 of article 5 of our constitution, which reads :

''Every [white] male person of twenty-one years and upwards belonging to either of the following classes—who shall have resided in Kansas six months next preceding any election, and in the township or ward in which he offers to vote, at least thirty days next preceding such election—shall be deemed a qualified elector.  .  .  .''

The admitted facts bring the members of the home who voted clearly within this provision of the constitution, and their right so to vote would not have been questioned were it not for section 3 of article 5 of the constitution, which reads :

''For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United

States, or of the high seas, nor while a student of any seminary of learning, nor while kept at any almshouse or other asylum at public expense, nor while confined in any public prison ; and the legislature may make provision for taking the votes of electors who may be absent from their townships or wards, in the volunteer military service of the United States, or the militia service of this state ; but nothing herein contained shall be deemed to allow any soldier, seaman or marine in the regular army or navy of the United States the right to vote.''

The logic of the contention of defendant in error is that, by reason of this section, one entering the home is disqualified while kept there from acquiring a residence for voting purposes, and such was the decision of this court in *Lawrence v. Leidigh*, supra. The conclusion there reached was that by accepting the benefits of the home he forfeited his citizen rights to acquire a voting residence at that place while he continued to enjoy its privileges. If the constitutional guaranty that any citizen of the United States may voluntarily change his residence for all purposes at will, and the right of suffrage conferred by section 1 of article 5 of our constitution upon every male citizen of the United States who shall have resided in Kansas for six months next preceding any election, and in the township or ward in which he offers to vote at least thirty days next preceding such election, are to be taken from him by other provisions of the constitution, such other provisions should be couched in language so clear as to admit of no other interpretation, so positive as to admit of no doubt. Courts should not indulge in doubtful interpretations which lead to depriving a citizen of rights plainly guaranteed to him by the constitution.

Conceding, therefore, for the purpose of this case,

that the home is an eleemosynary institution, an
"almshouse or other asylum," and maintained at pub-
lic expense, does the constitutional provision quoted,
either in direct terms or by necessary implication,
deprive persons, while maintained therein, from ac-
quiring a voting residence?  That part of the section
applicable to this question reads :  "For the purpose
of voting, no person shall be deemed to have gained or
lost a residence by reason of his presence or absence
. . . while kept at any almshouse or other asylum
at public expense. . . ."  The conclusion in *Law-
rence v. Leidigh, supra,* so far at least as the reasoning
of the court appears, was reached entirely through as-
certaining the meaning of the word "deem," which
was found to mean :  " 'To hold in belief, estimation,
or opinion.'  'To judge ; adjudge ; decide ; sentence ;
condemn.'  'To have or be of an opinion."  Its syno-
nyms are 'esteem' and suppose.' "  The learned chief
justice then elucidated these various definitions of this
word as applied to the provision under considera-
tion :

"For voting purposes, no person while kept at an
asylum at public expense shall be adjudged or de-
clared to have gained a residence ; nor of him shall
the gaining of a residence be held in belief or estima-
tion ; nor as to him shall any one have or be of an
opinion that he has gained such residence.  This is
the meaning which the law, as well as common usage,
has affixed to the word 'deemed.' "

The writer of that opinion, in discussing the word
"deemed" and elucidating its application, left out of
his illustrations, and overlooked in his reasoning, the
language which expresses the intention of the framers
of that section, and this omission necessarily led to a
wrong conclusion.  If these examples were necessary

to make plain the meaning of this word as used in the sentence they should have been written :

For voting purposes, no person while kept at an asylum at public expense shall *by reason of his presence*, be adjudged or declared to have gained a residence ; nor of him shall the gaining of a residence, *by reason of his presence*, be held in belief or estimation ; nor as to him shall any one have or be of an opinion that *by reason of his presence* he has gained such residence.

Thus written, the word "deemed" loses none of its force, nor is its meaning obscured or rendered less clear. This writing is expressive of, and keeps constantly and prominently in mind, the thought which was in the mind of the framers of that provision of the constitution, namely, that the fact of residence in an almshouse or other asylum and there being kept at public expense would not of itself be sufficient evidence to establish a voting residence. This provision is not that for the purpose of voting no one can acquire a residence while kept at any almshouse or other asylum at public expense, but that he shall not be deemed or adjudged to have acquired such residence by reason of his presence, while or during the time he is so kept. This provision of the constitution does not prevent one so kept from acquiring a voting residence, if such be his purpose. He is as free to change his residence as if he were not a recipient of this bounty.

In support of his contention, the defendant in error strongly relies on the decision in *Silvey v. Lindsay et al.*, 107 N. Y. 55, 13 N. E. 444, which was cited and quoted as a precedent in *Lawrence v. Leidigh*. We have carefully examined this case, and we are satisfied that it is not an authority on this question. It does not decide the question presented in this case. It appears from the opinion that Silvey offered to vote in the

town of Bath, in which was situated the New York Soldiers' and Sailors' Home, of which he was a member.   His right to vote was challenged on the ground that he was not a resident of the town of Bath.   Upon a statement made by him concerning his residence, the board refused to permit him to vote.   The court, in stating the question, (page 56) said:

"The question submitted to the court was: 'Did James Silvey (the plaintiff) gain a residence in the town of Bath, so as to entitle him to vote at said town meeting, by reason of his presence as an inmate of said institution?'

"It was agreed that, in case the question was answered in the affirmative, judgment should be rendered in favor of plaintiff for fifty dollars' damages and costs."

The statement by Silvey to the board, as quoted in the opinion, at page 58, was as follows:

"I answer that I reside in the town of Bath, for the reason that I was admitted an inmate of the New York Soldiers' and Sailors' Home in this town, by the authorities thereof, in the year 1880, and have remained such inmate from that time to the present, with the intention at all times of making my residence in said institution, so long as I shall be permitted to remain such inmate.   At the time of my admission to said institution I was an honorably discharged soldier of the United States, and a resident and voter of the city of New York; I, therefore, answer that I am a resident of the town of Bath.   In becoming an inmate of said institution, I intended to change my residence from the city of New York to the fifth election district of said town of Bath."

The court then said:

"It is obvious that his narration of an intention to change his residence to Bath, and his assertion that he resided in Bath, can be accepted only as conclusions from the circumstances detailed in connection

with them. They were his conclusions, and defend-
ants, in view of his whole statement, were not bound
by them. They were bound by the facts stated, and
were required to say upon those facts whether the
plaintiff was qualified in the necessary particular, and
undoubtedly they were to determine the question at
their peril.''

After quoting from the constitution, the court said :

''And the decision of the inspectors of election was
that in their opinion the intending voter was in Bath
as a mere inmate of the institution and for a tempo-
rary purpose, and not as a resident of the voting dis-
trict, or with intent to make the town a fixed or
permanent place of residence, and so it would seem.''

On page 60 it was said :

''His only intention in going to Bath was to be an
inmate of the home, and it was only as such inmate
that his residency was to be continued. . . . He
could not gain a residence by being an inmate, which
means nothing more than his presence in the home ;
and excluding that, there is nothing in the case to show
that a residence in Bath had been acquired.''

The court decided that case on the particular facts
involved, and in no way intimated that it was its
opinion that under the provisions of the constitution
of New York, which is the same as ours, a voting
residence could not be acquired by a member of a
soldiers' home. The language used later in the opin-
ion, while mere *dictum*, shows clearly what the court
thought of the effect of the provision under discussion.
On page 61, in speaking with reference to this par-
ticular provision, it said :

''But the question in each case is still as it was be-
fore the adoption of the constitution, one of domicile or
residence, to be decided upon all the circumstances of
the case. The provision ( art. 2, § 3 ) disqualifies no
one ; confers no right upon any one. It simply elimi-

nates from those circumstances the fact of presence in the institution named or included within its terms. It settles the law as to the effect of such presence and as to which there had before been a difference of opinion, and declares that it does not constitute a test of a right to vote, and is not to be so regarded.   The person offering to vote must find the requisite qualifications elsewhere.

"We think, therefore, the question submitted by the parties, viz., 'Did James Silvey gain a residence in the town of Bath so as to entitle him to vote at said town-meeting by reason of his presence as an inmate of said institution?' should have been answered in the negative, and it is so answered by this court."

It is impossible, by any fair construction of any of the language used in this opinion, to say that it was within the mind of the court to hold that a member of such home could not acquire a voting residence.   The only declaration made by the court upon that subject indicates clearly that such was not its understanding. It said that "the provision disqualifies no one"; that is, disqualifies no one from acquiring a right to vote. It declares that the only effect of the provision is to eliminate from the inquiry the fact of presence and that such presence shall not constitute a test of the right to vote.   "The person offering to vote must find the requisite qualifications elsewhere."

The case of *Wolcott v. Holcomb*, 97 Mich. 361, 56 N. W. 837, 23 L. R. A. 215, is relied upon as authority for the doctrine that an inmate of a soldiers' home cannot acquire a voting residence.   This case is clearly not applicable under the provisions of our constitution. The Michigan constitution reads:

"No elector shall be deemed to have gained or lost a residence by reason of his being employed in the service of the United States, or of this state;   .   .   .

nor while a student of any seminary of learning; nor while kept at any almshouse or other asylum at public expense; nor while confined in any public prison."

The court, at page 367, said:

"We are of the opinion that the terms 'by reason of' and 'while' were understood by the framers of the constitution to have a different meaning. In the former case the intention would very largely, if not entirely, govern the question of domicile, while in the latter it would not. It was clearly the intention of the former provision to give the citizen the right, if he chose, to carry his residence with him to the place where he was employed in the service of the United States or of the state, and in the latter case it seems equally clear that it was the intention not to give that right. What object otherwise could there have been in the use of these two terms?"

The court there construed the language as operating differently upon the different persons enumerated in the section. Those persons employed in the service of the United States or of the state were held to be within the meaning of the term "by reason of," and of them it was said that it was the intention to give to such person the right "to carry his residence with him to the place where he is employed; that the intention would very largely, if not entirely, govern the question of domicile." Concerning students of seminaries of learning, and persons kept at almshouses and other asylums at public expense, it was held that they were not included in the term "by reason of," and therefore were deprived of the right to acquire a voting residence; that it seemed "equally clear that it was the intention not to give that right." Whether this distinction be right or wrong, it was the basis of the decision in that case. Our constitutional provisions cannot be thus read. The term "by reason of" is

carried through the section and applies alike to all persons therein enumerated.

A decision of this question by the supreme court of Idaho, to which our attention is called, is *Powell v. Spackman*, 65 Pac. 503, 54 L. R. A. 378, (not officially reported) and deserves attention. The understanding of that court, and the interpretation placed upon the provision, as well as its reasons therefor, are found at page 506, as follows:

"Now, the constitutional provision under consideration does not prohibit inmates of the home, or other asylums kept at public expence, from changing their places of residence. They may do so. But, for the purpose of voting, they shall not be deemed to have gained or lost a residence by reason of their presence in the institution, while kept at public expense."

To this statement we perfectly agree. In this connection, however, the court also said:

"The constitution does not disfranchise any one. . . . In the provision under consideration no one is disqualified from voting. It is declared, however, in that provision, where the parties therein named shall vote. When it declares that no one, by reason of presence or absence in certain service, or at certain institutions, shall be regarded or deemed to have gained or lost a residence for the 'purpose of voting,' it is only meant that whoever enters such service or such institution, if he votes while in such service or institution, must do so at the place where he was entitled to vote at the time he entered such service or institution."

The Idaho constitution makes no such declaration. The only declaration it makes is that such person shall not be deemed to be a voter by reason of his presence while in such service or while he remains in, or is kept at, such institution. It is observable that the conclusions of the court found in the quotation are

plainly and flatly contradictory. In the first part of the quotation it said that the constitution "does not prohibit the inmates of the home, or other asylums kept at public expense, from changing their places of residence. They may do so"; and later said that the provision declares that if the citizen votes while in such service or institution he must do so at the place where he was entitled to vote at the time he entered such service or institution. In the opinion it was asked:

"Now, having lived in other counties of the state, and having come into Ada county to reside at the Home, to be there kept at public expense, and residing nowhere else in the county, how can we, for the purpose of voting, regard them as 'having gained a residence' in the county by reason of their presence at the Home?"

We answer that such fact would not be so found from the fact alone of their presence at the Home. That is the one and only thing the provision prohibits. It does not prohibit them from gaining such residence but declares that their presence at the Home shall not be deemed the test in determining the question. As expressed in *Silvey v. Lindsay*, supra, the fact of a voting residence must be found elsewhere; that is, it must be found from other facts. In determining whether a voter possesses the requisite qualifications under our constitution, the intention as expressed in *Wolcott v. Holcomb*, supra, "would very largely, if not entirely, govern the question of domicile." The fact that the voter had abandoned his former residence with the intention of never returning thereto, and that he had entered the Home with the intention of permanently remaining therein, are sufficient facts from which it might be found that he had established

a voting residence at the Home, provided he possessed the other qualifications.

It is worthy of notice that the court in that case, in construing the section under consideration, carried the term "by reason of" through the section and applied it to all persons enumerated, and then cited the case of *Wolcott v. Holcomb*, supra, as authority for its opinion that a member of the Home cannot acquire a voting residence, while that case distinctly holds that any person to whom the term "by reason of" is applicable may carry his residence with him.

The reasons assigned by the Idaho court for the provision are that the members of the Home own no property, pay no local taxes, do no work in or for the municipality, and have no pecuniary interest in its local affairs; that, in fact, they have no connection with, and stand in no relation to, the local municipal government; that the provision was intended to protect the municipal government from the participation of an unconcerned body of men in the control, through the ballot-box, of municipal affairs in whose further conduct they have no interest, and, for the mismanagement of which by the officers their ballots might elect, they sustain no injury. If it were necessary to find reasons for the enactment of this provision, those given are not happy. To hold property, to pay taxes, to do work in or for the benefit of the local municipal government, or to have a pecuniary interest in its local affairs, have never been thought to be necessary qualifications of a voter. What is meant by having "no connection with, and stand in no relation to, the local municipal government," is not apparent. All persons are entitled to the enforcement of the laws of such government for the protection of their persons and property. All persons are alike compelled, under

penalty, to obey such laws.   These are relations which every citizen bears to the local municipal government, whether he be a voter or not.   Such persons have, therefore, an interest·in the enactment of proper and just laws and in the election of persons who will fairly and honestly maintain them.

As to the second reason assigned, this case presents facts which fairly illustrate its weakness.   At this election there were some twenty or more votes cast by members of the Home, which were admitted to have been legally cast.   Can it be said that they had any greater interest in the local government, or stood in any different relation thereto, than the persons whose votes were rejected?   They possessed no other qualifications, except that it was found that they had been. residents of the township of Delaware before entering the Home.

The supreme court of California has passed on a provision of its constitution which is exactly like the first subdivision of section 3 of article 5 of our constitution, and, in determining the right of a person engaged in the service of the United States to acquire a voting residence in the state where employed, (*People v. Holden*, 28 Cal. 123, 136), said :

"Nor did the court err in allowing to the relator the votes of Melindy, Whipple, and McGrew.   The objection taken by the defendant to their votes is not well founded.   They were not disqualified by reason of section four of article second of the constitution. That section does not add to or take from the conditions upon which the fact of residence is made to depend.   It merely declares that 'no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States,' which means simply that in determining the fact of residence, presence. or absence in the service of the United States shall not

be taken into account, or, in other words, neither presence nor absence in the service of the United States is a condition upon which the fact of residence can be affirmed or denied.   Hence, the mere fact that Melindy came to Mendocino county in the capacity of physician, McGrew in the capacity of supervisor, and Whipple in the capacity of laborer to the Indian reservation, did not deprive the first of his former residence in Siskiyou, nor the second of his former residence in Sutter, nor the last of his former residence in Contra Costa.   Nor did it preclude them from acquiring a residence in Mendocino, if disposed to do so.   That it was their intention to acquire a domicile in Mendocino county sufficiently appears from the evidence.   Such being the case, there is nothing in the constitutional provision in question (which is merely declaratory of the common law) which stands in the way of their doing so.''

The precise question before us was determined by that court in *Stewart v. Kyser*, 105 Cal. 459, 463, 39 Pac. 19.   It said :

''It is contended for appellant, however, that Killalee could not have gained a residence for the purpose of voting at the Veterans' Home while there as a beneficiary at public expense, for the reason that the gaining of such residence is prohibited by the fourth section of the second article of the constitution of this state, which is as follows :

'''For the purpose of voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas ; nor while a student at any seminary of learning ; nor while kept at any almshouse or other asylum at public expense ; nor while confined in any public prison.'

''As construed by our supreme court in the case of *Budd v. Holden*, 28 Cal. 137, this section does not have the effect claimed for it by counsel for appellant.   In

that case the qualification of soldiers to vote, while employed in the service of the United States, was questioned, and it was *decided* that their presence in Mendocino county, while thus employed in the service of the United States, did not 'preclude them from acquiring a residence in Mendocino, if disposed to do so.' The court further said: 'That it was their *intention* to acquire a domicile in Mendocino county sufficiently appears from the evidence. Such being the case, there is nothing in the constitutional provision in question (which is merely declaratory of the common law) which stands in the way of their doing so.' Thus their residence for the purpose of voting in Mendocino county was made to depend upon proof of their *intention* to make that county their place of residence while they were present in the service of the United States ; there being no question that they had all other requisite qualifications of electors."

In *Darragh v. Bird*, 3 Ore. 229, the question arose over the right of certain employees of the government to acquire a voting residence under the following provision of the Oregon constitution :

"For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States or of this state."

At page 239 the court said :

"The question of residence being one of act and intention, the framers of the constitution left the matter entirely to the discretion of the parties themselves. They say we will neither enlarge or restrict the right of persons in this respect, but leave it with them to elect as to where they will claim their residence."

To enforce this idea the court further said, page 240 :

"Suppose that a person residing in Wasco county were to go to Salem, in Marion county, to work on a state building, and were to remain there two or three

years, would it be contended that he had acquired no
residence in that county because he had been an em-
ployee of the state ?   The fact that he is such employee
does not deprive him of his right to elect whether he
will retain residence in Wasco county, or whether he
will abandon it and adopt another, and the principle
is precisely the same whether he be an employee of
the state or of the United States.''

In support of the principle announced in this opin-
ion, see *Sanders v. Getchell*, 76 Me. 158, 49 Am. Rep.
606 ; *Lankford v. Gebhart*, 130 Mo. 621, 637, 32 S. W.
1127, 51 Am. St. Rep. 585.

These cases express the true interpretation to be
given the section of the constitution under considera-
tion.

It is argued that if the principle here announced
shall obtain that the convicts in the penitentiaries may
acquire a voting residence at the place where it is situ-
ated, because they are physically present.   Actual
presence is all that can be claimed for a convict in the
penitentiary, and we have said that mere presence
while an inmate or member of such institutions shall
not be a test of residence.   The convict is not in the
penitentiary of his own volition.   He does not intend
to make that his home, and did not leave his former
residence with an intention not to return.   Before he
left his former residence he had forfeited his citizen
rights to elect to change his residence.   He is inca-
pacitated while a convict either to select a residence
or to vote at the place where he resided before con-
viction.

We are also admonished that by adopting this view
the provision of the constitution is made a mere rule
of evidence, and that it is foreign to the higher pur-
pose of the organic law to prescribe mere rules of evi-

dence.    The framers of our constitution were not of this opinion.    Section 13 of the Bill of Rights reads :

"Treason shall consist only in levying war against the state, adhering to its enemies, or giving them aid and comfort.    No person shall be convicted of treason unless on the evidence of two witnesses to the overt act, or confession in open court."

It will be observed that this section not only prescribes a rule of evidence but also determines the number of witnesses that shall be necessary to prove the fact and the nature of the evidence to be given by these witnesses before a conviction may be had.

The defendant in error files a cross-petition and alleges error in excluding from the count 310 legal votes cast for Drake D. Spencer.    In view of our conclusion, whether or not these votes should have been counted becomes immaterial.    If counted and added to the total vote cast for Spencer he would still not have sufficient votes to elect him.    His total vote would be considerably less than the total vote received by Cory when there is added to Cory's vote the 741 votes cast for him by the members of the Home which were excluded from his count by the contest court, and the district court.

A contestee in possession of a certificate of election is not required by section 2659, General Statutes of 1901, in defending his right to his certificate, to plead his qualifications to hold the office.

The judgment of the district court is reversed, and the cause remanded with directions to enter judgment for the contestee.

All the Justices concurring.