(66 Misc. Rep. 395.)

In re SANFORD'S ESTATE.

(Surrogate's Court, Cattaraugus County. February, 1910.)

1. TAXATION (§ 895*)—TRANSFER TAX—EXPENSES OF LITIGATION.

The value of a decedent's estate for the purpose of the transfer tax is not to be diminished by the expense of litigation among the distributees, though such expense may diminish their individual shares.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1718; Dec. Dig. § 895.*]

2. TAXATION (§ 895*)—TRANSFER TAX—DEDUCTIONS.

Where a person alleging an agreement with a decedent under which. he was to have decedent's entire estate at his death brings a claim for the same, the expense of resisting it should be deducted from the value of the estate in making an appraisal.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 895.*]

In the matter of the estate of Harry E. Sanford, deceased. From an assessment of a transfer tax, the Comptroller appeals. Modified and affirmed.

I. R. Leonard, for appellant.

Dowd & Quigley, for administrators and distributees.

DAVIE, S. The decedent died, intestate, January 20, 1908, and letters of administration upon his estate were issued to Elzer and Melzer Bushnell, cousins of the decedent, February 5th following. The administrators made application for an assessment of the estate and determination of the tax to which the estate was liable under the provisions of the taxable transfer act (Consol. Laws, c. 60, §§ 220–245). Such appraisal, made by the surrogate, resulted in an order, under date of January 19, 1909, assessing the value of the real estate of which decedent died possessed at $21,100 and of his personal estate at $30,-913.74, and making deductions therefrom for debts, funeral charges,. and expenses of administration to the extent of $17,858.37, leaving the net value of the estate $34,155.37, and assessing the tax thereon at the rate of 5 per cent., making the total tax $1,707.77. The Comptroller appeared by his attorney and specifically objected to the deduction of the cost and expenses of certain litigations from the value of the estate before the assessment of the tax. The items so objected to were allowed by the surrogate and constitute a part of the $17,858.37 above mentioned.

The facts upon which the Comptroller's objections were based and necessary to be considered upon this appeal are, briefly, as follows:. Shortly after the issuing of the letters of administration to the Bushnells, a petition was filed by one Carrie M. Douglas, asking for a revocation of the letters so issued, and for her own appointment as administratrix, alleging in such petition that she was a sister of the decedent and his sole heir at law and next of kin, and that the Bushnells had no interest in the estate and were not entitled to administer thereon. This claim was strenuously controverted by the administrators, and the issue thereby raised came on for trial before the Surrogate's Court;. and, after the completion of all the proofs in the case, which were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

voluminous, the hearing occupying many days, all the parties interested in the estate entered into a stipulation giving the petitioner, Douglas, a certain portion of the estate as her full share, and fixing the compensation of the various attorneys who had appeared for the respective parties as follows: To Harry E. Lewis, attorney for petitioner, $1,100; G. W. Cole, who appeared for certain of the heirs, $106; I. N. White, appearing for other heirs, $200; T. H. Dowd, who appeared for the administrators, for services and expenses, $1,800; stenographer's fees and expenses, $75. It was also agreed, as one of the conditions of the settlement, that the fees of the various witnesses who had attended upon the hearing be paid from the estate; the total amount so stipulated and provided for as the expenses and disbursements of the contest being the sum of $3,732.50.

After the determination of this controversy, an equity action was begun against the administrators and all the heirs at law and next of kin of the decedent by one Frank A. Raymond, alleging that prior to the decedent's death he had entered into a contract with him to the effect that he (Raymond) should support and maintain the decedent and his mother during their respective lives and pay their funeral expenses and, as compensation therefor, should have all the estate, real and personal, of which decedent died possessed; and further alleging that he had fully performed such contract on his part, and demanding judgment that his rights be accordingly established, and that the administrators be required to deliver to him the personal estate and the heirs directed to convey to him the real estate of which the decedent died possessed. Answers were interposed in this action on behalf of the administrators and on behalf of the various heirs at law. The section was duly referred and tried before a referee, who reported in favor of the defendants. From the judgment entered upon such report, the plaintiff appealed to the Appellate Division of the Supreme Court, where the judgment was affirmed. The estimated costs and expenses of this litigation over and above the amount recovered from the defendants was $2,500. It is now claimed on behalf of the Comptroller that no portion of the expense of the Douglas litigation should have been deducted before assessing the tax, and that the $2,500—estimated expenses of the Raymond litigation—is excessive, and that no greater amount than $1,500 should have been deducted therefor.

Considering the claim of the appellant that the item of $3,732.50—expenses of the Douglas contest—should not have been deducted before determining the tax, the statute (Tax Law [Consol. Laws, c. 60] § 220) provides as follows:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property, in the following cases: (1) When the transfer is by will or by the intestate laws of this state from any person died seised or possessed of the property while a resident of the state."

Upon the death of the decedent, intestate, his estate passed, by operation of law, to his heirs and next of kin, subject, however, to the

payment of his legal debts, reasonable funeral charges, and legitimate expenses of administration. Such charges diminish the actual value of the estate passing to those entitled. Aside from such deductions, the right of the state to collect the tax in accordance with the statutory rates and provisions attaches to the total value of the estate; the rights of the state and of the distributees become fixed and established at the same instant and immediately upon the death of the intestate. If a controversy subsequently arises as to the relative rights of distributees, involving expense and litigation, the rights of the state cannot be prejudiced or impaired thereby. It is still entitled to the tax upon the full amount passing originally under the intestate laws. While such a controversy may diminish the individual distributive shares, the misfortune is that of the individual, and in that regard is the same as any other necessary expenditure in protecting one's property rights. Any other rule would permit litigating elements to consume an entire estate with costs and disbursements, entirely defeating the claim of the state. This item should not have been deducted before assessing the tax, this conclusion being entirely in harmony with the result reached in Matter of Westurn, 152 N. Y. 93–102, 46 N. E. 315; nor is such conclusion in conflict with the decision in Matter of Gihon, 169 N. Y. 443, 62 N. E. 561. In the case last cited a temporary administration became necessary for the conservation of the corpus of the estate pending contested probate. The reasonable expense of a necessary temporary administration is as much a legal charge upon the estate from the time of its devolution as is the payment of debts or other ordinary expenses of administration. The claim of the appellant regarding the deduction of the $2,500 item—estimated expense of the Raymond litigation—presents an entirely different aspect. In that case the plaintiff claimed to have become entitled to the entire estate by virtue of a contract between himself and the decedent; in other words, that decedent left no estate passing by virtue of the intestate laws of the state. If Raymond's claim had prevailed, no estate would have remained. Consequently, the defense of this litigation was absolutely necessary to establish the fact that there was any estate whatever—a situation entirely different from a controversy between distributees solely regarding their respective interests. It may be stated, as a general rule, that expenses of litigation in conserving and preserving the corpus of the estate are proper deductions before assessment of the tax; but the expense of litigation between distributees over their respective interests, which does not in any manner affect the size or the amount of the estate originally passing, should not be so deducted. In view of the character of the Raymond litigation, the time consumed in the trial of the case, and the somewhat protracted nature of the controversy, it would not seem that the estimate of $2,500 for legal expenses was in any sense excessive. This deduction was a proper and legitimate one.

A decree will be accordingly entered, modifying the former assessment of the tax under the transfer act by providing that the further sum of $13,732.50 is liable to tax at the rate of 5 per cent.

Decreed accordingly.