No. 11,781.

ESTATE OF WALDRON.

WALDRON *v.* THE PEOPLE.

Decided May 7, 1928.

Mr. R. D. THOMPSON, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. ANDREW H. WOOD, Assistant, for the people.

*En Banc.*

Mr. Chief Justice Denison delivered the opinion of the court.

This is a controversy over the inheritance tax upon the estate of the late John M. Waldron, a former member of the Colorado bar and resident here, who died in Denver, October 21, 1924. Plaintiff in error, who is his widow and the executrix of his will, claimed that at death he was not a resident of Colorado and so certain of his estate's assets were not subject to the inheritance tax of this state. The county court held against her and, on appeal, the district also, making special findings that he was a resident of Colorado and that even if not the assets in question were subject to the tax.

The property which the deceased left in Colorado was as follows: (a) U. S. Liberty and Federal bonds $104,624.06; (b) certificates of deposit in Boston banks $20,278.05; (c) certificates of deposit in Denver banks $103,209.88; (d) check of the Salt Creek Consolidated Oil Company of Maine, a corporation, payable to the deceased, $1,250 (all the above at Waldron's death were in his safe deposit box in the United States National Bank in Denver); (e) cash taken from the safe deposit box and given to his wife seven days before his death and in anticipation thereof, $30,000; (f) bank deposits on open account in various banks in Denver $25,999.20. Total $285,361.19.

Against this property the Inheritance Tax Commissioner assessed $15,293.94.

In addition to claiming all this property exempt the executrix claims that even if the taxes are allowed, yet from the total amount of taxable property should be deducted the executrix's fees, which she claims are $6,000 and the sum of $2,800 paid out by her to settle a will contest.

1. The first question, then, for us to answer is whether Waldron died a resident of Colorado. That question is in two parts: (1) Was he an actual resident of Colorado? and (2) if not, is he to be deemed such under our statute C. L. sec. 7484, par. 5?

The evidence that Mr. Waldron was actually a resident of Massachusetts is strong, but not conclusive. Apart from that, however, C. L. section 7484, paragraph 5, is as follows: "For any and all purposes of this act and for the just imposition of the inheritance tax, every person shall be deemed to have died a resident and not a non-resident, of the state of Colorado if and when such person shall have dwelt or shall have lodged in this state, during and for the greater part of any period of twelve consecutive months in the twenty-four months next preceding his or her death; * * * The burden of proof in an inheritance tax proceeding shall be upon those claiming exemption by reason of the alleged non-residence of the deceased." * * *

The evidence is that the deceased was in Denver from October 5th to November 4th, 1923; from November 11th, 1923 to April 11th, 1924; from September 29th to October 21st, 1924,—188 days. He was formerly for many years a citizen of Colorado and at his death all the property in question, some $285,000, was in Denver and during some of the days of his stay, above enumerated, he was in the practice of the law, consulting with clients and receiving retainers here.

The Attorney General takes the "twelve consecutive months" from October 21, 1923 to October 21, 1924, and from the evidence computes residence of the deceased in Colorado thus:

Oct. 21–Nov. 4, 1923................ 14 days
Nov. 11, 1923—Apr. 11, 1924........152  ''
Sept. 29–Oct. 21, 1924.....,........ 22  ''

                                    188  ''

The executrix maintains that the "period of twelve consecutive months" specified in the statute means twelve calendar months, and that therefore either October 1923 or October 1924 must be excluded in the computation, which would reduce the days to less than a half year; but it would not.

| | | |
|---|---|---|
| Oct. 5–Nov. 4, 1923 | 30 | days |
| Nov. 11–Dec. 31, 1923 | 50 | " |
| Dec. 31–Apr. 11, 1924 | 102 | " |
| Sept. 29–Oct. 1, 1924 | 2 | " |
| | 184 | " |

One hundred and eighty-four days are more than one-half a year. Mr. Waldron, therefore, had, at the time of his death "lodged in this state, during and for the greater part of any period of twelve consecutive months in the twenty-four months next preceding his * * * death," whether we regard these months as the months named in the calendar or not.

The plaintiff in error, however, claims that the meaning of the statute is that the deceased must have lodged in Colorado for the greater part of each of the "twelve consecutive months" herein mentioned, and her counsel cites *In re Green's Estate,* 99 Misc. Rep. 582, 164 N. Y. Supp. 1063–1065 (affirmed without opinion by the Appellate Division, 179 App. Div. 890, 165 N. Y. Supp. 1088) and *In re Barbour's Estate,* 185 App. Div. 445, 173 N. Y. Supp. 276–281 (affirmed without opinion 226 N. Y. 639, 123 N. E. 854). The argument of the opinion In re Green's Estate is that the statute is so unjust, when construed as the Attorney General contends, that "unless the words * * * are so clear and unequivocal as to bear no other construction" that one will not be given. We think the words are capable of no other construction. The theory of plaintiff in error requires us to insert the words "each month of" so as to make the statute read "The greater part of *each month of* any period of twelve

consecutive months," which we have no right to do. We might with equal reason say that the lodging must be of one period. But even if we should adopt the construction asked for we do not see that injustice, if there be injustice, will be avoided, although it was avoided as to the heirs of Mrs. Green. Why is it less unjust to presume residence in Colorado because I have lodged there one-half of each month of a given year than because I have lodged there for six whole months thereof or for irregular periods amounting to six months thereof? The only difference seems to be that one is more likely to occur than the other. *In re Barbour's Estate, supra,* involved all the personal property of decedent without as well as within the state.

It is argued that our legislature in adopting the statute in question adopted the construction·of it by the New York courts, but the rule invoked is not a conclusive presumption, but a guide in construction. The original case in this state on this point correctly states it is to be "the *general* rule" (*Stebbins v. Anthony,* 5 Colo. 348, 356), it does not require us to reject what seems to us a plain meaning.

Again: Our inheritance tax act is a mixture of sections taken from the acts of several different states—at least three, New York, Illinois and California. The plaintiff in error seeks to have us follow New York decisions with reference to the sections taken from New York, California in decisions with reference to the sections taken from California; in one instance seeks to have us repudiate the rule entirely, and, further on in his brief, seeks to have us adopt it again; but we think that, whereas our act is not the adoption of any particular act from any particular state, but is made up of sections taken from many different sources, some of which are altered, some adopted in substance, some apparently composed by our own legislators, it cannot be said that we are adopting with this act the various decisions of each particular state whose legislation ours more or less resembles. We

must take our act as we find it, and construe it as we think right.

It is argued that the statute creates a mere prima facie presumption that the residence of deceased was Colorado, subject to rebuttal, and that the proof is overwhelming · that his real residence was Massachusetts.

We do not accede to that proposition. It seems clear to us that when the statute says he "shall be deemed to have died a resident" it is declaring a conclusive presumption, because: (1) If it had intended a mere prima facie one it would have said so; (2) if "deemed" means "presumed prima facie," it would be an idle proposition because it would merely put the burden of proof of non-residence of the deceased upon the heirs, which is expressly provided later in the same section; and (3) both derivation and weight of authority are with defendant in error on this point. *Com. v. Pratt,* 132 Mass. 246, 247; *Powell v. Spackman,* 7 Idaho, 692, 698, 65 Pac. 503; *Re Rogers and McFarland,* 19 Ont. L. 622, 639, citing many cases; *Lawrence v. Willcocks,* 1 Q. B. (1892) 696, 699; *Regina v. Manning,* 3 C. & K. 887; *Leonard v. Grant,* 5 Fed. 11; *Thompson v. Cragg,* 24 Tex. 582, 599; *State v. Worden,* 27 R. I. 484, 63 Atl. 486; *Ex Parte Smith,* 33 Nev. 466, 111 Pac. 930; *Cory v. Spencer,* 67 Kan. 648, 653, 73 Pac. 920; *Checotah v. Eufaula,* 31 Okla. 85, 94, 119 Pac. 1014; *Blaufus v. People,* 69 N. Y. 107, 111, 25 Am. Rep. 148; *Nelson v. Jones,* 245 Mo. 579, 598, 151 S. W. 80; *Cardinel v. Smith,* 5 Fed. Cas. Page 45, No. 2395; *Dilworth v. Schuylkill,* 219 Pa. St. 527, 529, 69 Atl. 47. There are a few cases which hold that "deemed" means "presumed prima facie," e. g. *Rex v. Fraser,* 45 N. S. 218, 219, but the conditions there were peculiar. The New York Surrogate Court, *In re Frick's Estate,* 116 Misc. Rep. 488, 190 N. Y. Supp. 262–264 and *In re Barbour, supra,* are cited, but as shown above, do not control us.

It follows that the district court was right when it adjudged that Mr. Waldron died a resident of Colorado,

8

but even if this were not so the property in question is subject to the tax.

Assuming that Waldron was a nonresident, we have five questions: (1) Was the cash given to Mrs. Waldron subject to the Colorado transfer tax? (2) Were the securities in the safe deposit box subject thereto? (3) Were the checking accounts in the Denver banks subject thereto? (4) If these were so subject, should the payment in settlement of the will contest be allowed as a deduction? (5) Should the executrix's fees be allowed as a deduction?

The pertinent statutes are as follows: "The words 'estate' and 'property' as used in this act shall be taken to mean the real and personal property or interest therein or income therefrom of the testator * * * and shall include all personal property within or without the state."

"The word 'transfer' as used in this act shall be taken to include the passing of property or any interest therein or income therefrom, * * * by * * * bequest * * * in the manner herein described. C. L. sec. 7484.

"A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, or of any interest therein or income therefrom * * * in the following cases: * * * B. when the transfer is by will * * * of *property within the state* and the decedent was a nonresident of the state at the time of his death. C. L. sec. 7485.

1. We think the cash is subject to the tax.

The executrix contends that this cash was not "property within the state" within the meaning of those words in the above quotation; because moveables follow the person and the person is presumed to be at his residence; but it is conceded that the above rule is modified with reference to inheritance tax and that personal property which itself can have situs, i. e. is tangible, is taxable in situ; cash is tangible property available for use in the hands of any possessor whether it be coin, government

notes or bank notes (we are not informed which); it has a situs and is subject to the transfer tax where it is. *Blodgett v. Silberman,* U. S. Sup. Ct. Apr. 16, 1928, 48 Sup. Ct. 410.

2. As to the government bonds, it is hard to distinguish them from the cash. They are unregistered, payable to bearer, transferable from hand to hand. How can it be said that they have not a locus, and that they do not exist where they are, that they do not exist even where their owner and possessor is, but exist in some place where by fiction of law he is supposed to be?

With reference to these bonds, (and the certificates of deposit and the check as well) it is claimed that the case is different. They, it is claimed, were credits, choses in action, without situs in themselves, having no situs but that of the person of their owner, and that only at his residence, and that, therefore, for the purpose of taxation, they cannot be in the state in which he does not reside.

We cannot agree with this proposition. We think that the opinion in the case of *Walker v. People,* 64 Colo. 143, 171 Pac. 747, is strongly against the plaintiff in error on this point. The decision in that case was that certain bonds secured by mortgage on Colorado, Wyoming and New Mexico property held by a deceased resident of the state of New York, and actually in New York, were not subject to our inheritance tax, but quotes with approval from 37 Cyc. 1563, ''the bonds of a domestic corporation are not taxable at the domicile of the corporation if kept at the domicile of a nonresident owner, but are subject to the tax if physically present in the state, although belonging to a nonresident decedent''; and it is said in a dissenting opinion by Mr. Chief Justice Hill, concurred in by Mr. Justice Scott, that even though the bonds were in New York, being the bonds of a domestic corporation, secured by mortgage on Colorado property, they were ''property within the state'' for the purpose of taxation. It may be said that that would be fiction but it is equally

a fiction to say that certificates of deposit when physically present in Colorado are not "property within the state" of Colorado.

The case of *Wheeler v. New York*, 233 U. S. 434, 34 Sup. Ct. 607, 58 L. Ed. 1030, also holds that under the New York act bills and notes, physically present in the state are property within the state, and their transfer is taxable. The Ohio courts and some others hold that foreign municipal and corporate bonds are not "Property within this state" though physically there, if owned by a deceased nonresident. *Cassidy v. Ellerhorst*, 110 Ohio St. 535, 144 N. E. 252, but we do not agree with them. As to government bonds. *Plummer v. Coler*, 178 U. S. 115, 20 Sup. Ct. 829. That they might also be subject to a transfer tax in mass is irrelevant. *Blodgett v. Silberman, supra.*

The legal fiction expressed in the maxim "mobilia personam sequuntur" yields to the fact of actual control elsewhere. *Liverpool etc., Co. v. Board of Assessors,* 221 U. S. 346, 31 Sup. Ct. 550.

It is earnestly urged that the words "property within this state" have been construed by the courts of this state to exclude notes and evidences of indebtedness owned by nonresidents, when the authorities sought to subject them to general taxes even though they were then present physically in the state. That does not seem to be perfectly accurate. In *Arapahoe County v. Cutter*, 3 Colo. 349, the "property" was notes secured by mortgage on Colorado land, but held in California. This court decided that they were not "within the state" under Session Laws of 1870, page 88. That case then does not meet the case before us. In *Hathaway v. Choury*, 14 Colo. App. 478, 60 Pac. 574, the proceeding was under the statute of 1876 that all moneys owned by nonresidents that are kept and loaned within the state of Colorado for the purpose of investment and profit "should be taxable." The property there in question was notes held by an agent here for collection, and it

was held that they were not taxable here, because, among other reasons, the moneys they represented were not kept and used and loaned here. Bonds, evidences of indebtedness and certificates of deposit, however, may be "property within the state" even though they do not represent money kept, used and loaned within the state; this decision, then, has little force in the case before us.

The Supreme Court of the United States in *Blackstone v. Miller*, 188 U. S. 189, 23 Sup. Ct. 277, took the stand taken by this court in *Walker v. People, supra,* though in the matter of state tax on foreign held bonds, 15 Wall. 300, they had held that *general* taxes could not be levied on a nonresident's bonds.

Even then if the Colorado decisions had construed the words "property within this state" as plaintiff in error claims with reference to the general tax, that would be no more than advisory to us and would not control the construction of those words in the inheritance tax. The inheritance tax law is not in pari materia with the general tax law. Cooley on Taxation (4th Ed.) § 1726. "Decisions relating to the situs of property for the purpose of direct taxation are of little value in determining the situs of property for the purposes of an inheritance tax" (Id. § 1736), and in section 1729 "they are not property taxes and hence the constitutional provisions relating to taxes on property are not applicable." And in section 1726, the author states what is also stated in *Walker v. People, supra,* and *Brown v. Elder,* 32 Colo. 527, 77 Pac. 853, that inheritance tax is not on property, but on the succession; that is, the transfer, as in both title and substance the Colorado act is, and declares itself to be. Property may be within this state for the purposes of succession though not within it for other purposes. (That the rules with respect to general taxes and inheritance taxes are not analogous, see also *Buck v. Beach,* 206 U. S. 392, 408, 27 Sup. Ct. 712; 26 R. C. L. 209; *Matter of Knoedler,* 140 N. Y. 377, 380, 35 N. E. 601. Iowa has gone farther and holds that a mere debt

due a nonresident decedent is "estate or property * * * within this state" under their statute and subject to the tax. *Chaffin v. Johnson,* 200 Ia. 89, 204 N. W. 424.)

Again: this very property is under administration or has been administered by the county court of the City and County of Denver, in probate, adjudicating and enforcing the transfer which is sought to be hereby taxed. Is it reasonable to say that property which is within this state for the purpose of adjudicating that transfer is not within this state for the purpose of taxing the same?

As to the checking account in the bank, that also is subject to the inheritance tax. True, we have held in *Murray v. Washington County,* 67 Colo. 14, 185 Pac. 262, that a deposit is a debt of the bank to the depositor upon which the bank cannot be taxed, but, as we have shown above, that is of little force in regard to a question under the inheritance tax law. There is no distinction in this respect between a checking account and money represented by a certificate of deposit. The decision with respect to the inheritance tax statutes regard such "money in bank" as money in hand. *Hoyt v. Keegan,* 183 Ia. 592, 167 N. W. 521. See also *Matter of Houdayer,* 150 N. Y. 37, 44 N. E. 718, putting substance before form; and *Liverpool etc. Co. v. Board of Assessors, supra.*

The case of *Gilbertson v. Oliver,* 129 Ia. 568, 105 N. W. 1002, holds the contrary but discusses the question as if the tax were on the property whereas it is, as appears above, on the transfer thereof, but *Hoyt v. Keegan, supra,* upon an amended statute, holds otherwise, and cites *State v. Probate Court,* 128 Minn. 371, 150 N. W. 1094.

Should the $2,800 paid to settle contest of the will be deducted from the total sum? We think not. What was formerly taxed by the Colorado statute was the right to receive the estate; *People v. Bemis,* 68 Colo. 48, 189 Pac. 32; but now the tax is upon the transfer, and operates instantly at death. *People v. Palmer's Estate,* 25 Colo. App. 450, 139 Pac. 554. Compare S. L. 1920, section 21 with C. L. 7485.

The whole estate was received; the $2,800 was part of it and, though afterwards used to buy peace was, nevertheless subject to the tax instantly upon the death. If we hold otherwise the estate may be depleted in fraud of the tax. Gleason & Otis on Inh. Tax. (4th Ed.) 619, 620; *In re Marks' Estate,* 82 N. Y. Supp. 803; *Matter of Thrall,* 157 N. Y. 46, 51 N. E. 411; *In re Sanford's Estate,* 123 N. Y. Supp. 284; *Estate of Graves,* 242 Ill. 212, 89 N. E. 978; *Re Lines' Estate,* 155 Pa. 378, 26 Atl. 728; *Matter of Westurn,* 152 N. Y. 93, 46 N. E. 315.

There is no doubt that the plaintiff in error is right in her claim that it may be proper for the executrix to defend against a contest, but it does not follow that she can pay out of the estate to settle such a matter and so deplete the tax. Suppose she had paid $100,000.00, could we sanction it? The question answers itself.

As to the deduction of the $6,000.00 fees claimed by the executrix, the statute (§ 4796 C. L. '21) is as follows:

"* * * He (the executor) shall make a report in duplicate thereon in writing to the county court and to the attorney general showing the fair market value of all of the estate belonging to the deceased at the time of his death and the description of the same, all debts, claims, fees and commissions, including the fees and commissions, of the executor and administrator; Provided, That when such executor or administrator is a legatee, devisee or beneficiary, such fees and commission shall not be considered a proper claim or deduction when such amount received as a beneficiary is in excess of a reasonable fee and commission; when such reasonable fee or commission would be of a greater amount than the administrator or executor received as a beneficiary, then the amount in excess of the sum so received as a beneficiary shall be deducted when same shall have been filed against said estate or allowed by the court, Provided, further, That statutory allowances authorized by section 7223 of the revised statutes of 1908, and section 7056 of the compiled statutes of Colorado, 1921, and the

federal estate tax and the inheritance or transfer tax of any state shall not be considered a proper claim, or deduction in computing the value of the estate of a decedent.''

The executrix is the sole legatee and since the amount she receives as beneficiary exceeds any reasonable fees she can claim, they cannot be deducted.

We cannot agree with the construction which counsel for plaintiff in error seeks to put upon the statute above quoted.

The judgment is affirmed.

Mr. Justice Campbell not participating.