[Civ. No. 19009.   Second Dist., Div. Three.   Feb. 26, 1953.]

NOAH BEERY, JR., et al., Appellants, v. COUNTY OF LOS ANGELES et al., Respondents.

Loeb & Loeb; Gang, Kopp & Tyre; Irell & Manella; Robert E. Copp, Louis M. Brown, Adrian A. Kragen, Roger H. Davis and Donald T. Rosenfeld for Appellants.

Harold W. Kennedy, County Counsel, Andrew O. Porter and Arvo Van Alstyne, Deputy County Counsel, for Respondents.

WOOD (Parker), J.—Demurrer to amended complaint was sustained with leave to amend within 10 days. Plaintiffs having failed to amend, the action was dismissed. They appeal from the order of dismissal.

In the first cause of action of the amended complaint it is alleged: plaintiffs are the executors of the will of Wallace Beery; defendant Byram is the tax collector, and defendant Quinn is the assessor, of Los Angeles County; defendant city of Beverly Hills authorized the county of Los Angeles to assess and collect property taxes for said city; Wallace Beery died on April 15, 1949, a resident of Beverly Hills; letters testamentary were issued to plaintiffs on April 17, 1949; at noon on the first Monday of March, 1949, and thereafter to and including April 15, 1949, said Beery owned and had in a safe deposit box in a bank in Beverly Hills certain obligations of the United States government consisting of gold certificates of the United States, national bank notes, and federal reserve notes; about June 1, 1949, said assessor, acting on behalf of said county, said city, the Metropolitan Water District, and the Beverly Hills Unified School District, assessed said obligations at $370,000 as unsecured personal property; about June 15, 1949, said collector demanded payment of the tax of $15,759.41 against plaintiffs based upon said assessments; on July 20, 1949, plaintiffs petitioned the board of supervisors of Los Angeles County, sitting as a board of equalization, to cancel said assessment and tax; said petition was denied on said July 20th; on August 10, 1949, plaintiffs paid to said collector, involuntarily and under protest, the said $15,759.41; on October 21, 1949, plaintiffs filed a claim for refund of said sum with the auditor of said county, and said claim was denied by the board of supervisors on November 15, 1949; on December 20, 1949, plaintiffs filed a corrected claim for refund with said auditor, and the claim was denied on January 3, 1950, by said board; it was alleged therein that said assessment and tax are void, illegal, and "unconstitutional" for the following reasons: (1) bank notes issued by national banking associations, federal reserve notes

issued by federal reserve banks, and gold certificates issued by the United States government are not subject to taxation under the provisions of the Constitution of the United States and the Constitution of California, (2) such bank notes, federal reserve notes, and gold certificates, are exempt from taxation by said county, city, water district, and school district, under the provisions of section 212 of the Revenue and Taxation Code of California. It was also alleged therein that no part of said $15,759.41 has been repaid by said county or city to any of the plaintiffs.

The second cause of action contained, in substance, the same allegations as the first cause of action, except as to the kind of assessment and the amount thereof. It was alleged in said second cause of action that about June 1, 1949, said assessor assessed said obligations at $370,000 ''as an escaped assessment of unsecured personal property for the year 1948''; said assessor demanded payment of the tax of $17,020.16; plaintiffs petitioned said board of equalization to cancel the assessment; plaintiffs paid to said collector, under protest, the said $17,020.16; plaintiffs' claim and corrected claim for refund were denied by the board of supervisors; that no part of said $17,020.16 has been repaid by said county or city.

There are 10 other causes of action. Each additional cause of action incorporates by reference the substance of the first or second cause of action, except the reasons stated therein for the alleged invalidity of the assessment. In such additional cause of action, a further and different reason for invalidity of the assessment is alleged.

The allegations as to those additional causes of action are as follows:

Third cause of action: The tax of $15,759.41 (referred to as 1949 tax) is void and illegal for the reason said property constitutes solvent credits subject to tax solely as provided in section 2153 of the Revenue and Taxation Code of California.

Fourth cause of action: The tax of $17,020.16 (referred to as 1948 tax) is void and illegal for the reason said property constitutes solvent credits subject to tax solely as provided in said section 2153.

Fifth cause of action: The 1949 tax is void and illegal for the reason the assessment and taxation of said notes was part of a general scheme wilfully adopted by the assessor to assess and tax ''notes of this type held in a safe deposit vault while, at the same time, failing to classify and assess

other property similarly situated other than as solvent credits.'' Such other property consisting of: similar bank and federal reserve notes and gold certificates when deposited in savings and checking accounts in banks, in escrow, with the county treasurer, and in court; promissory notes; corporate securities; trust and deposit accounts. As to said property similarly situated, reference is made to a general deposit creating a depositor-creditor relationship without segregation of the money deposited and without right to return of the identical money deposited. (It was stipulated that this last allegation be added as an amendment.) By reason of said assessment and taxation plaintiffs were denied the equal protection and the uniform operation of the law, and their property was taken without due process of law.

Sixth cause of action: (The allegations herein are the same as those in the fifth cause of action, except the allegations herein pertain to the 1948 tax.)

Seventh cause of action: The 1949 tax is void and illegal for the reason the state, said city and county have not passed the legislative amendments necessary under section 425 of the United States Code to subject such bank notes, federal reserve notes. and gold certificates to taxation by the state or its subdivisions.

Eighth cause of action: (The allegations herein are the same as those in the seventh cause of action, except the allegations herein pertain to the 1948 tax.)

Ninth cause of action: The 1949 assessment is void and illegal for the reason the assessment discriminates against national bank notes, federal reserve notes, and gold certificates on deposit in safe deposit vaults.

Tenth cause of action: (The allegations herein are the same as those in the ninth cause of action, except the allegations herein pertain to the 1948 assessment.)

Eleventh cause of action: The 1949 tax is void and illegal for the reason that the obligations of the United States are exempt from taxation by state, county, or municipal authorities.

Twelfth cause of action: (The allegations herein are the same as those in the eleventh cause of action, except the allegations herein pertain to the 1948 tax.)

Appellants contend that federal reserve notes and national bank notes are promissory notes, and therefore are exempt from taxation under section 212 of the Revenue and Taxation Code. That section provides: ''*Notes*, debentures, shares

of capital stock, bonds, deeds of trust, mortgages, and any interest in such property are exempt from taxation." (Italics added.)

The question is whether the Legislature intended that the word "Notes," as used in said section, should include federal reserve and national bank notes. Appellants argue that the statements on such notes fit the statutory definition of a promissory note. A negotiable promissory note is defined in section 3265 of the Civil Code as: "[A]n unconditional promise in writing made by one person to another, signed by the maker, engaging to pay on demand, or at a fixed or determinable future time, a sum certain in money to order or to bearer. . . ."

A federal reserve note states on its face that the United States of America will pay to bearer on demand a certain specified sum of money. Also such a note states that it is legal tender and is redeemable in lawful money at the United States Treasury or at any federal reserve bank. A national bank note states on its face that a certain named national bank will pay to the bearer on demand a certain specified sum of money. Also such a note has statements thereon to the effect that it is National Currency, it is secured by collateral deposited in the United States Treasury, and is redeemable in lawful money at said treasury or at the national bank that issued the note. Appellants argue further that federal reserve notes and national bank notes are obligations of the banks that issued them; a national bank note is a loan secured by collateral; a federal reserve note is a direct obligation of the United States secured by collateral; national bank notes circulating the same as money are obligatory promissory notes of the issuing banks, and federal reserve notes are also such promissory notes; that it is impossible to distinguish, for the purposes of property tax laws of this state, between a national bank note, designated by law as a promissory obligation of the bank, and a promissory obligation issued by any other financially responsible corporation; there cannot be any justification for a different tax classification of such promissory notes; if the Legislature intended that such notes should not be exempt from taxation, a simple amendment of said section 212 would have accomplished that purpose.

By statute, federal reserve notes and national bank notes are legal tender. (Title 31 U.S.C.A., § 462.) Although such notes are in the form of the usual promissory note, they

are issued under the direction and authority of the United States and are redeemable in lawful money at the United States Treasury. They, being legal tender, may be used to pay an obligation evidenced by the usual form of promissory note. Section 109 of title 12 of the United States Code Annotated provides that national bank notes may be circulated "the same as money." ■ The characterization of federal reserve notes and national bank notes as mere promises to pay, or promissory notes, is overridden by statutory provision that such notes are legal tender, and by the general and common practice of recognizing such notes as money. ■ Federal reserve notes and national bank notes are United States money. ■ Such notes are not choses in action and are not intangible property, but are tangible property. In *Blodgett* v. *Silberman*, 277 U.S. 1, at page 18 [48 S.Ct. 410, 72 L.Ed. 749 at p. 760]), it was said in referring to bank notes and coin in a safe deposit box in New York, "[W]e think that money, so definitely fixed and separated in its actual situs from the person of the owner as this was, *is tangible property*. . . ." (Italics added.) In *In re Waldron's Estate*, 84 Colo. 1 [267 P. 191], the question was whether a transfer of cash in a safe deposit box in Colorado, by a nonresident, was subject to an inheritance tax in Colorado. It was held therein that the cash was tangible property and was subject to such tax. The court said that "cash is tangible property available for use in the hands of any possessor whether it be coin, government notes, or bank notes . . . ; it has a situs and is subject to the transfer tax where it is. . . ."

In 1894 the Congress granted the states permission to tax money. That law was to the effect that United States legal tender notes and other notes and certificates of the United States intended to circulate as currency, and that gold, silver, and other coins shall be subject to taxation as money on hand or on deposit under the laws of any state, provided that such taxation shall be in the same manner and at the same rate that any state shall tax money or currency circulating as money within its jurisdiction. (28 Stats., chap. 281, p. 278; title 31 U.S.C.A., § 425.)

Article XIII, section 1 of the Constitution of California provides: "All property in the State except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value. . . . The word 'property,' as used in this article and section,

is hereby declared to include *moneys*, . . . and all other matters and things . . . capable of private ownership. . . ." (Italics added.) Section 14 of said article provides that the Legislature may exempt entirely from taxation any types or classes of personal property.

The Legislature enacted (in 1939) said section 212 of the Revenue and Taxation Code which provides, as above shown, that "Notes," among other things, are exempt from taxation.

It is to be observed that said section 212 does not expressly state that money is exempt. A question arises as to whether, by implication, the word "Notes" includes money such as federal reserve and national bank notes. ▉ All the items of property mentioned in said section 212 are intangible property. Section 111 of the Revenue and Taxation Code states that : " 'Intangible personal property' means only notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, and mortgages.'' A comparison of the items mentioned in those two sections shows that all the items of intangible personal property mentioned in section 111, except solvent credits, are in section 212. It thus appears that said section 212 was intended to exempt from taxation all intangible property, except solvent credits. In *Roehm* v. *County of Orange*, 32 Cal.2d 280 [196 P.2d 550], it was said (p. 289) that the only intangibles (except franchises which are in a class by themselves) subject to taxation in this state are solvent credits, which are taxed at the rate of one per mill on their actual value. ▉ Statutes granting exemption from taxation are strictly construed to the end that such concession will not be extended beyond the plain meaning of the language employed. (*Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729, 734 [221 P.2d 31, 15 A.L.R.2d 1045].) ▉ "[S]ettled principles of statutory construction require that any doubt be resolved against the right to the exemption." (*Sutter Hospital of Sacramento* v. *City of Sacramento*, 39 Cal.2d 33, 39 [244 P.2d 390].) ▉ Said section 212, in granting exemption from taxation, uses the general term "Notes," and does not mention federal reserve notes or national bank notes which are money and are very different from the ordinary note. Since that section was intended to apply only to intangible personal property, and since money is tangible property, it follows that it was not intended that the word

"Notes," as used therein, should include by implication or at all, federal reserve notes or national bank notes.

A further indication that the Legislature did not intend to include money, such as federal reserve notes and national bank notes, in the list of property exempted from taxation under section 212 is that the property therein mentioned was exempted upon condition that a state law would be passed taxing net income.[1] In 1935, such an income tax law was passed. It appears that the intangible property which was listed as exempt under section 212 was income-producing property, and the Legislature intended that the tax on the income therefrom was a sufficient burden on the benefits derived from the ownership of such property. (See *Roehm* v. *County of Orange, supra,* 32 Cal.2d 280, 289.) Promissory notes, in the usual form, are customarily income-producing. Federal reserve notes and national bank notes do not bear interest. Since money on hand is nonincome producing, it appears that the Legislature intended that it should be taxed as other nonincome-producing property is taxed.

Appellants also contend that if federal reserve notes and national bank notes are not "Notes," within the meaning of section 212, they are solvent credits within the meaning of section 113 of the Revenue and Taxation Code, and they are taxable only as solvent credits. Section 113 states: " 'Solvent credits' means all credits except notes, bonds, and debentures." Section 112 of said code states: " 'Credits' means solvent debts owing to the assessee. . . ." A debt is payable in legal tender. Federal reserve notes and national bank notes are money and are legal tender for payment of a debt. Under such circumstances, the notes are not to be classified as debts. Such notes are not solvent credits.

Appellants also contend that the federal reserve and national bank notes, which were in the safe deposit box, could

---

[1] Said section 212 of the Revenue and Taxation Code is based upon former section 3627(a) of the Political Code (Stats. 1935, ch. 834, p. 2251). The exemptions stated in said section of the Political Code were made upon condition that a state law would be passed taxing net income. A part of said section of the Political Code recited: "The property aforesaid [referring to the items of property exempted from taxation], except solvent credits, shall no longer be taxable under the provisions of this section if and when a net income tax shall be passed or adopted in this State. Upon the passage or adoption of such tax and from the time such income tax becomes effective *such net income tax shall be in lieu of the tax herein provided for upon notes,* debentures, shares of capital stock, bonds, deeds of trust, mortgages and any legal or equitable interest therein." (Italics added.)

not be taxed because the state has not enacted legislation permitting it to levy such tax. As hereinabove stated, in 1894 the Congress granted the states permission to tax money on hand or on deposit, provided that such taxation shall be in the same manner and at the same rate that any state shall tax money or currency circulating as money within its jurisdiction. They argue that the state does not seek to tax the money in the safe deposit box at the same rate it would tax the money on deposit, and therefore has not availed itself properly of the permission to tax money; money on deposit is taxed at various rates; a savings account is not taxed; a commercial account is taxed at the solvent credit rate of one per mill; money held in specie by a county or a bank is not taxed; such taxation is not taxing money on deposit at the same rate as money on hand. ▆ The Constitution of California provides as above stated, that all property in the state, not exempt from taxation, shall be taxed in proportion to its value, and that the word "property" includes moneys. In view of said constitutional provision, it was not necessary to pass enabling legislation. ▆ The question is whether the taxes herein were levied in accordance with the permission granted by the Congress. The conditions imposed by the Congress, with respect to permission to tax, were: that the money to be taxed shall be taxed as money on hand or on deposit, and that the taxation shall be in the same manner and at the same rate that the state shall tax money or currency circulating as money within its jurisdiction. A commercial account in a bank creates a debtor-creditor relationship. A savings account also creates such a relationship and bears interest which is subject to an income tax. The amended complaint alleges that money held by a county, a court, in escrow, and in trust accounts are general deposits creating a depositor-creditor relationship without segregation of the money deposited and without right to return of the identical money deposited. It is to be noted that gold certificates were also in the safe deposit box. No question is raised upon appeal with respect to the ad valorem tax on the gold certificates. The federal reserve notes and the national bank notes, which were taxed herein, were not on deposit. They were in the safe deposit box and were money on hand. The amended complaint does not allege that said money was not taxed in the same manner and at the same rate that money or currency circulating as money is taxed by the state. The amended complaint

states that the assessor failed to assess and classify other property similarly situated other than as solvent credits, and that such other property so situated consisted of similar notes when deposited in savings and checking accounts, and in other places where a depositor-creditor relationship was created. The complaint shows that such other property, allegedly taxed as solvent credits, was intangible property consisting of creditors' rights created by depositing money. As above stated, the notes involved herein were tangible property consisting of money on hand. It is not unreasonable taxation to tax intangible property and tangible property at different rates. It does not appear that the money on hand was not taxed in the same manner and at the same rate that other money on hand is taxed, and it does not appear that the taxes were not levied in accordance with the permission granted by the Congress.

Appellants also contend that the taxation of the notes is invalid because it is discriminatory, affects the value of money, and contravenes the power of the Congress to regulate the value of money. Their argument with respect to this contention is similar to their argument regarding the last preceding contention. ▪ Taxing money on hand as tangible property, or taxing solvent credits as intangible property, does not interfere with the power of the Congress to regulate the value of money. This contention is not sustainable.

The order of dismissal is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 23, 1953. Schauer, J., was of the opinion that the petition should be granted.